## 17418

Harold TIMMONS, Appellant, v. The NEWS & PRESS, Inc.,
Respondent

(103 S. E. (2d) 277)

*Charles E. Smith,* Esq., of Florence, *for Appellant,*

*Messrs. Paulling & James,* of Darlington, *for Respondent,*

April 18, 1958.

TAYLOR, Justice.

This appeal is from an Order of the Court of Common Pleas of Darlington County sustaining respondent's demurrer to appellant's amended complaint upon the grounds that the article published in respondent's newspaper was "not libelous *per se* nor is it so by *innuendo.*"

The amended complaint, omitting formal parts, is as follows:

"2. That on or about April 25, 1957, plaintiff was engaged in a business as a merchant in Darlington, South Carolina, and was of good name, fame and credit as such.

"3. That on said day the defendant maliciously, wilfully, and recklessly intended to and did injure plaintiff in his said business by composing and publishing at Darlington, South Carolina, in the defendant's newspaper, the following false, defamatory, sensational, malicious, reckless and insinuating article matter, to wit:

" 'Back Lot 35-Cent Drunks Plague Darlington Police

" 'You can get on a good drunk for less than 35 cents if you don't mind risking your life or the taste of bay rum. And hundreds of Darlington County residents are doing it, buying an estimated $1,000.00 a week, in the once-popular shaving lotion.

" 'There ought to be something done about the problem, Chief J. Peele Privette told The News and Press this week, observing that one "back lot" store in Darlington is reported to have sold $500.00 in bay rum in one week.

" 'At 35 cents a pint, that would pay for over 1400 binges. Even the most seasoned vagrant wouldn't need over a pint.

" 'The concoction is 50 per cent alcohol, and a pint of it will give you the same kick as a pint of 100 proof whiskey, which would cost three dollars. The difference in cost of the drunks is thus $2.65. This explains the bay rum popularity.

" 'Of course, the label on the bottle stresses "for external use only", but this seldom worries the habitual users, who according to Chief Privette, predominantly are white. There have been no known deaths from the alcoholic liquid, here recently, but there is no doubt but that it is harmful to the human body, when used inside rather than outside.

" 'A study is being made here to try to control the problem, Chief Privette states. There is no state law governing

its sale. Numerous cites, including Augusta, Georgia, have imposed a prohibitive tax on bay rum and have thus limited its sale.

" 'In the meantime, 45 per cent of the drunks arrested in the city of Darlington got that way on bay rum. Chief Privette says that tonic seems to make more belligerent-meaner-drunks than whiskey. Sometimes when several of the inebriated prisoners are locked up at the same time and it gets a little warm, the smell of bay rum from their bodies gives a flagrant fragrance to the jail.

" 'Although there is one most popular source of the potent tonic in Darlington, bay rum can be bought in variety stores in the county. One local druggist said he discontinued stocking the item when it was *noticably* being bought for consumption and not external use.

" 'The habitual offenders continue to show up regularly at the city jail. There they sober up overnight and post bond, if they have it, the next morning. If they were charged with drunkenness only, they are fined in city court held each week $12.00 or 15 days imprisonment. If they were arrested for drunkenness and disorderly conduct, the fine is $17.28 or 30 days. The difference in the cost of bay rum and whiskey, they can apply to their fines.'

"4. With this article and made a part of the aforementioned article was a picture of plaintiff's place of business with this caption:

" 'Here is a Darlington "back lot" on a busy day. In one week, $550.00 for bay rum was spent here by Darlingtonians whose aim is to feel, not smell, good. Police Chief J. P. Privette says something should be done to control the problem. The once-popular shaving lotion, 50 per cent alcohol, costs one-ninth as much as more orthodox whiskey.'

"5. That the defendant was aware and had knowledge that the plaintiff's business was the only 'back lot' store in the city of Darlington. That the reference to the 'back lot' store in the aforementioned article was directed solely at the plaintiff's place of business maliciously, wilfully, recklessly.

and with the intent to and did damage his reputation, credit, and standing in the community.

"6. That as a result of this publication, the defendant has suffered not only loss of reputation but continuous harassment by telephone concerning the article by parties known and unknown.

"7. The article was intended and calculated to reflect shame and disgrace upon the plaintiff and did so. The article caused plaintiff to be subjected to hatred, ridicule and contempt by business associates, friends and members of his family.

"8. The defendant printed the article with the intention to impress upon the public that the plaintiff was operating a nuisance in the city of Darlington, that his store was patronized by habitual drunkards and drinkers of bay rum and the article aforementioned did so impress the public and business associates of the plaintiff. That as the result of the public being so impressed, the plaintiff's customers failed to come in the plaintiff's business, causing plaintiff to lose thousands of dollars of his profit, loss of business, loss of business associations and customers.

"9. The defendant printed the aforementioned article which was false, malicious and contained defamatory insinuations that plaintiff lacked moral turpitude by dealing bay rum as a beverage to the extent that his business was the center of a plague of bay rum drunks. The defendant intended to and did convey that plaintiff's customers or a large majority of plaintiff's customers were drinkers of bay rum and bay rum drunks, causing customers to refrain from going to plaintiff's business in fear of being called a bay rum drinker and thereby causing plaintiff to lose his business profits, suffer shame and disgrace and be the subject of ridicule by the general public, and loss of name, fame and credit as a reputable merchant.

"10. That by means of said publication and circulation of said publication, the plaintiff was greatly injured in his reputation and credit in his business which has suffered

great loss of customers, trade, respect, and damage to his name in the operation of his business and has been deprived of great gains and profits and peace and security which otherwise he would have made or had and has otherwise substantially loss and injured to his damage of One Hundred Fifty Thousand ($150,000.00) Dollars, both actual and punitive damages."

Allegations of a complaint in an action for slander must be taken as true for the purpose of consideration of demurrer to complaint on ground that it does not state a cause of action, *Stokes v. Great Atlantic & Pacific Tea Co.*, 202 S. C. 24, 23 S. E. (2d) 823; *J. Clint McClain v. William R. Altman*, 231 S. C. 251, 98 S. E. (2d) 263.

Words not actionable by their plain and ordinary meaning cannot be made so by *innuendo, Stokes v. Great Atlantic & Pacific Tea Co., supra;* but where words used are capable of different meanings, one of which is slanderous, the jury must ascertain sense in which they were published and decide which meaning was, in fact, conveyed to readers, and plaintiff may offer evidence of the surrounding circumstances from which defamatory meaning may be inferred. It is, therefore, proper to allege and prove the meaning claimed to have been intended and conveyed, *Culler v. Great Atlantic & Pacific Tea Co.*, 183 S. C. 352, 191 S. E. 67. To render the defamatory statement actionable, it is not necessary that the false charge be made in a direct open and positive manner. A mere insinuation is as actionable as a positive assertion if it is false and malicious and the meaning is plain, *Duncan v. Record Publishing Co.*, 145 S. C. 438, 143 S. E. 31.

"* * * The Court will not hunt for a forced and strained construction to put on ordinary words, but will construe them fairly, according to their natural and reasonable import, in the plain and popular sense in which the average reader naturally understands them. There is no presumption of defamation." *Hospital Care Corporation v. Commercial*

*Casualty Insurance Company,* 194 S. C. 370, 9 S. E. (2d) 796, 800.

"\* \* \* Strong and violent language or insinuation disproportionate to the occasion may raise an inference of malice and thus lose the privilege which might otherwise attach to the occasion." *Levy v. North Carolina Mutual Life Ins. Co.,* 184 S. C. 111, 191 S. E. 811, 813; *Turner v. Montgomery Ward & Company,* 165 S. C. 253, 163 S. E. 796; *Switzer v. American Ry. Express Co.,* 119 S. C. 237, 112 S. E. 110, 26 A. L. R. 819; *Ramsay v. Harrison,* 119 Va. 682, 89 S. E. 977; *Robinson v. Van Auken,* 190 Mass. 161, 76 N. E. 601.

This Court has defined libel as:

"\* \* \* malicious defamation, expressed either by writing or printing, or by signs, pictures, effigies, or the like, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue, or reputation, or publish the natural or alleged defects, of one who is alive, and thereby to expose him to public hatred, contempt, ridicule, or obloquy, or to cause him to be shunned or avoided, or to injure him in his office, business, or occupation." *State v. Brock,* 61 S. C. 141, 39 S. E. 359, 362; *Smith v. Bradstreet Co.,* 63 S. C. 525, 41 S. E. 763.

Appellant's amended complaint alleges that respondent was aware that appellant's business is the only "Back Lot" store in the Town of Darlington; that the respondent published the article, heretofore referred to, along with a photograph clearly showing appellant's business; that such willful statements were malicious and falsely accused appellant with dealing in bay rum as a beverage to the extent that his business was the center of a plague of bay rum drunks, resulting in appellant's customers refraining from going to appellant's store for fear of being called bay rum drinkers and loss of business and profits; that by reason of such publication appellant was caused to suffer shame, disgrace and humiliation and became the subject of ridicule by the general public. For the purpose of this appeal

as it comes up upon demurrer the foregoing must be taken as true, and we are of opinion that the Order appealed from should be reversed; and it is so ordered. Reversed.

STUKES, C. J., and OXNER, LEGGE and Moss, JJ., concur.