**Deborah Ann KATZ, Appellant,**

v.

**Elizabeth DOLE, Secretary of Transportation, Appellee,**

**American Civil Liberties Union of Virginia, Amicus Curiae.**

No. 82–1379.

United States Court of Appeals, Fourth Circuit.

Argued Feb. 11, 1983.

Decided June 1, 1983.

George M. Chuzi, Washington, D.C. (Kalijarvi, Delate & Chuzi, Washington, D.C., on brief), for appellant.

James H. Phillips, Sp. Asst. U.S. Atty., Washington, D.C. (Elsie L. Munsell, U.S. Atty., Alexandria, Va., on brief), for appellee.

Before PHILLIPS, ERVIN, and CHAPMAN, Circuit Judges.

ERVIN, Circuit Judge:

Deborah Ann Katz is a former federal air traffic controller whose employment was terminated by the Federal Aviation Administration (FAA) in September, 1981, for alleged participation in an illegal strike against the FAA. Prior to that, on June 9, 1981, Katz, after exhausting her administrative remedies, began the present action in the United States District Court for the District of Columbia, naming the FAA's statutory superior, the Secretary of

Transportation, as defendant. Katz' complaint claimed that she had been subjected to sexual harassment and to disparate and adverse personnel actions amounting to gender discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e–16 (1981). The action was subsequently transferred to the United States District Court for the Eastern District of Virginia. At the close of the trial, that court found that Katz had not been the object of intentional discrimination on the basis of her sex and entered judgment for the Secretary. The court granted Katz limited relief on her prayer for a correction of her government employment files. Katz appeals. We conclude that Katz did make out a case of sexual harassment actionable under Title VII but find no error in the district court's handling of Katz' disparate treatment claim. We therefore affirm in part and reverse in part.[1]

I.

Katz entered the federal air traffic controller training program in 1974. In 1977, she was assigned to the Washington Air Traffic Control Center, and in August, 1980, she was certified as a fully trained controller. At the Washington Center, Katz was assigned to controller crew 1F, supervised by John J. Sullivan. She was the only woman on the crew. She was transferred to another crew in May, 1981, at her own request. While working on crew 1F and under Sullivan's supervision, Katz alleges she was subjected to substantial sexual harassment by FAA employees, including Sullivan and other supervisory personnel. She also asserts that she brought this harassment to the attention of Sullivan, who responded with further sexual harassment, and of Sullivan's superior, who reacted with indifference.

1. This case is not moot. Katz is appealing her termination through administrative proceedings which are still ongoing. In the event Katz prevails on this appeal, and subsequently is reinstated by the FAA, the award of injunctive or declaratory relief could be appropriate. In addition, even if she does not regain her job, Katz might be entitled to nominal damages and attorneys fees. *See Joshi v. Florida State University,* 646 F.2d 981, 991 n. 33 (5th Cir.1981), *cert. denied,* 456 U.S. 972, 102 S.Ct. 2233, 72 L.Ed.2d 845 (1982).

The record[2] confirms Katz' allegations. The FAA workplace was pervaded with sexual slur, insult and innuendo, and Katz was personally the object of verbal sexual harassment by her fellow controllers. This harassment took the form of extremely vulgar and offensive sexually related epithets addressed to and employed about Katz by supervisory personnel as well as by other controllers. The words used were ones widely recognized as not only improper but as intensely degrading, deriving their power to wound not only from their meaning but also from "the disgust and violence they express phonetically." C. Miller & K. Swift, *Words and Women* 109 (1977).

FAA supervisory personnel had been alerted to the problem. One of the Secretary's witnesses, the manager of the controller training program, testified that he was aware from female workers' complaints that sexual intimidation was a "common" experience at the agency. Sullivan testified that he had heard controllers referring to Katz by obscenities. Sullivan himself admitted that he had suggested to Katz that her problems with another controller, about whose sexual advances Katz was complaining, might be solved if Katz submitted to him. Uncontradicted testimony by Katz indicated that the supervisor of crew 2F once stated in her presence that he would consider accepting her transfer to his crew because of her sexual abilities. Katz' witnesses corroborated Katz' testimony that Sullivan and other crew members frequently referred to Katz by obscene words.[3]

The record is devoid of significant evidence to contradict Katz' claims that her employment by the FAA was conditioned by a pattern of personally directed sexual insult and innuendo. Furthermore, despite their knowledge of this harassment, her employer's supervisory personnel did nothing effectual to stop it, and indeed, in Sullivan's case, took part in it.

In *Garber v. Saxon Business Products, Inc.,* 552 F.2d 1032 (4th Cir.1977), we recognized that "an employer policy or acquiescence in a practice" of sexual harassment can constitute a violation of Title VII. When such harassment pervades the workplace, or is condoned or carried out by supervisory personnel, it becomes an illegal and discriminatory condition of employment that poisons the work environment. *See* 42 U.S.C. § 2000e–2(a)(1). Sexual harassment erects barriers to participation in the work force of the sort Congress intended to sweep away by the enactment of Title VII. *See Bundy v. Jackson,* 641 F.2d 934, 944 (D.C.Cir.1981). *See generally Los Angeles Dept. of Water & Power v. Manhart,* 435 U.S. 702, 707 n. 13, 98 S.Ct. 1370, 1375 n. 13, 55 L.Ed.2d 657 (1978) (in forbidding gender discrimination Congress intended to prohibit the "entire spectrum" of disparate treatment on the basis of sex).

Sexual harassment, like other forms of gender discrimination, can take many forms, but the Eleventh Circuit has identified two basic varieties: "harassment that creates an offensive environment ('condition of work') and harassment in which a supervisor demands sexual consideration in exchange for job benefits ('*quid pro quo*')." *Henson v. City of Dundee,* 682 F.2d 897, 908 n. 18 (11th Cir.1982), *citing* C. MacKinnon, *Sexual Harassment of Working Women* 32–47 (1979). *See* 29 C.F.R. § 1604.11(a) (simi-

---

**2.** Our review of this appeal is hampered by the lack of any written opinion by the district court. The court's findings of fact and conclusions of law were delivered orally immediately after the close of the trial, and are exceedingly laconic. The record, however, demonstrates clearly that the events of which Katz complains took place.

**3.** One of Katz' witnesses, a male controller in another crew, and a friend of Katz, testified that he and Katz used nicknames for one another with possibly sexual connotations. There is no evidence, however, that this linguistic intimacy was known to other, unfriendly and harassing FAA employees. A person's private and consensual sexual activities do not constitute a waiver of his or her legal protections against unwelcome and unsolicited sexual harassment.

lar analysis in EEOC guidelines on sexual harassment). Katz' primary claim falls within the "condition of work" category: she alleged in her complaint and proved at trial that her fellow employees' unwelcome and demeaning sexually related behavior toward her created "an intimidating, hostile [and] offensive working environment." 29 C.F.R. § 1604.11(a)(3). The evidence also indicates that Katz was made *quid pro quo* propositions at times.

■ Although such a claim of sexual harassment might be analyzed under the familiar Title VII disparate treatment formula,[4] we think that a somewhat different order of proof is appropriate. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802 n. 13, 93 S.Ct. 1817, 1824 n. 13, 36 L.Ed.2d 668 (1973) (disparate treatment analysis not necessarily applicable in every aspect to all factual situations). In the usual case involving allegations of disparate treatment, once the plaintiff establishes that he or she was disadvantaged in fact by some employment decision or practice, the crux of the matter is the question of motive: was there an intent to discriminate along legally impermissible lines such as race or gender?[5] In cases involving claims of sexual harassment, on the other hand, the sexual advance or insult almost always will represent "an intentional assault on an individual's innermost privacy." *Bundy,* 641 F.2d at 945. Therefore, once the plaintiff in such a case proves that harassment took place, the most difficult legal question typically will concern the responsibility of the employer for that harassment. Except in situations where a proprietor, partner or corporate officer participates personally in the harassing behavior, the plaintiff will have the additional responsibility of demonstrating the propriety of holding the employer liable under some theory of *respondeat superior.* We believe that in a "condition of work" case the plaintiff must demonstrate that the employer had actual or constructive knowledge of the existence of a sexually hostile working environment and took no prompt and adequate remedial action. *Henson,* 682 F.2d at 905; *Bundy,* 641 F.2d at 943; 29 C.F.R. § 1604.11(d). The plaintiff may do this by proving that complaints about the harassment were lodged with the employer or that the harassment was so pervasive that employer awareness may be inferred.[6] Thus, we posit a two

**4.** First, the plaintiff has the burden of proving by the preponderance of the evidence a prima facie case of discrimination. Second, if the plaintiff succeeds in proving the prima facie case, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the [employment decision.]" Third, should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 252–53, 101 S.Ct. 1089, 1093, 67 L.Ed.2d 207 (1981) (citations omitted).

**5.** The *McDonnell Douglas* scheme is intended "to bring the litigants and the court expeditiously and fairly to [the] ultimate question" of whether "the defendant intentionally discriminated against the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093.

**6.** Where the plaintiff's complaint is of *quid pro quo* harassment by supervisory personnel, the employer is strictly liable. *Henson,* 682 F.2d at 910; 29 C.F.R. § 1604.11(c). It is arguable that

Katz meets this less stringent standard for imposing liability. The district court specifically found that Katz' supervisor responded to Katz' complaint about sexual harassment by a co-worker, whom the supervisor had designated to oversee part of Katz' on-the-job training, with the suggestion that the problem might be solved by acquiescing in the co-worker's propositions. (We note that the identical result occurred when the plaintiff in *Henson* attempted to complain about a co-worker's advances. 682 F.2d at 905 n. 10. Sexually abusive supervisors are, it appears, short on originality as well as rectitude.) In addition, Katz testified, and her testimony was unrebutted, that during a discussion with another crew's supervisor on the possibility of transferring to his crew, the supervisor suggested that the transfer could be arranged in consideration of Katz' sexual favors. These facts probably make out a *quid pro quo* case. We need not resolve this question, however, since Katz' complaint was framed in condition of work terms, and we conclude that she meets the requirements to prevail on those terms.

step analysis. First, the plaintiff must make a *prima facie* showing that sexually harassing actions took place, and if this is done, the employer may rebut the showing either directly, by proving that the events did not take place, or indirectly, by showing that they were isolated or genuinely trivial. Second, the plaintiff must show that the employer knew or should have known of the harassment, and took no effectual action to correct the situation. This showing can also be rebutted by the employer directly, or by pointing to prompt remedial action reasonably calculated to end the harassment. Title VII is not a clean language act, and it does not require employers to extirpate all signs of centuries-old prejudices. But to avoid liability under Title VII, an employer on notice of sexual harassment must do more than indicate the existence of an official policy against such harassment. Where, as here, the employer's supervisory personnel manifested unmistakable acquiescence in or approval of the harassment, the burden on the employer seeking to avoid liability is especially heavy.[7]

▮ Katz satisfied the requirements for proving sexual harassment actionable under Title VII. Her testimony and that of her witnesses that she was the object of sustained and non-trivial harassment was corroborated by the Secretary's own witnesses. Furthermore, the record shows that the FAA was or should have been aware of the problem both because of its pervasive character and because of Katz' specific complaints directed to her superiors. No significant effort was made to end the harassment. While the agency did have an articulated policy against sexual harassment which involved seminars on the issue for its supervisors, this policy was not effective, and was known not to be effective by FAA supervisory personnel. On the basis of the undisputed facts in the record, we hold that

Katz was entitled to prevail on her claim of sexual harassment.

## II.

▮ Katz also appeals from the district court's rejection of her disparate treatment claim. Katz did show that she encountered scheduling difficulties on some occasions in arranging familiarization rides on airplanes, which are available to all controllers. She failed, however, to rebut the agency's articulated legitimate reason for her difficulties, namely, the demands of her ongoing training program. Katz also alleged that the denials of her first three requests for a transfer from crew 1F were discriminatory in motivation. Once again, the FAA articulated unrebutted legitimate reasons for its actions, on one occasion, a general policy against transfers, and on the other two, the absence of an open position on the crew to which she wished to be transferred.

▮ Katz experienced difficulties with Sullivan over the proper reporting of two injuries received in the FAA cafeteria. After Katz fell in September, 1978, Sullivan initially refused to put her on "traumatic injury leave," as opposed to sick or annual leave, although he later did so. After a similar injury in September, 1979, Sullivan again refused at first to list her on traumatic injury leave, and when he eventually did so, indicated that he had some doubts about the claimed extent of her injury. Sullivan's denial of any discriminatory motive, and other testimony that new injury-reporting guidelines were creating great confusion among supervisory personnel, support the district court's finding that these incidents were the result of misunderstanding rather than discriminatory intent.

On one occasion Sullivan refused to allow Katz, who was ill and at home, to speak to another controller, Moore. The evidence

---

7. Under this order of proof, the ultimate burden remains throughout on the plaintiff to prove the existence and the intentional nature of the harassment. This burden was satisfied in this case by the showing that Katz was subjected to sustained verbal sexual abuse.

showed that the agency had a policy against on-duty controllers taking telephone calls, that Moore was on duty at the time, and that Sullivan gave Moore a note informing him of Katz' call.

The district court did find that Katz' government records incorrectly debited her with eight hours of annual leave that should have been listed as sick leave and ordered the records corrected, but found no discriminatory motive behind the mistake. This finding is not clearly erroneous.

Katz argues that because the district court incorrectly found that she was not the victim of sexual harassment, its findings on her other claims of gender discrimination must also be set aside. We disagree. Katz' sexual harassment claim required the district court to apply Title VII in an area almost totally unexplored by our previous decisions. In contrast, her disparate treatment claims presented no novel legal questions. Since the record supports the district court's factual findings on those claims, we must uphold its conclusions.

### III.

The district court's judgment for the Secretary on Katz' disparate treatment claims is affirmed. The judgment against Katz on the issue of sexual harassment is reversed, and the case remanded for a consideration of remedies.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.