939 F.2d 157
 56 Fair Empl.Prac.Cas. 657,
56 Empl. Prac. Dec. P 40,837
John A. WHITE, Plaintiff-Appellant,
and
Claude C. Allen; Terri L. House; Kevin Boykins, Plaintiffs,
v.
FEDERAL EXPRESS CORPORATION, Defendant-Appellee.
John A. WHITE, Plaintiff-Appellee,
and
Claude C. Allen; Terri L. House; Kevin Boykins, Plaintiffs,
v.
FEDERAL EXPRESS CORPORATION, Defendant-Appellant.
 Nos. 90-2674, 90-2675.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 4, 1991.
Decided July 3, 1991.
As Amended Aug. 5, 1991.
 
 Richard Ethelbert Patrick, argued (Karl E. McDonald, McDonald & Patrick, on brief), Marlowe Heights, Md., for plaintiff-appellant.
 Martin K. LaPointe, argued, Adler, Kaplan & Begy, Chicago, Ill. (R. Mark Dare, Hazel & Thomas, P.C., Falls Church, Va., James R. Mulroy, II, Legal Dept., Federal Express Corp., Memphis, Tenn., on brief), for defendant-appellee.
 Before PHILLIPS, Circuit Judge, CHAPMAN, Senior Circuit Judge, and KISER, District Judge for the Western District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 In the court below, plaintiff-appellant John White, a black male formerly employed by defendant-appellee Federal Express Corporation, sought relief against Federal Express for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e, et seq., as well as the Civil Rights Act of 1866, 42 U.S.C. Sec. 1981.[1] White also alleged a pendent state claim for breach of contract. Both the Sec. 1981 claim and the state law claim were dismissed on summary judgment; after a trial to the district court, judgment was rendered adverse to the appellant on his Title VII claims. White now appeals the judgments as to his federal claims. Because we find no reversible error, we affirm both judgments.
 
 Discussion
 
 2
 The facts surrounding White's allegations are laid out in the Memorandum Opinion of the lower court, 729 F.Supp. 1536, 1541-43 (E.D.Va.1990) and we incorporate those findings by reference. Briefly stated, White was employed as a courier at the Federal Express facility in Springfield, Virginia from 1979 until his discharge in 1988.[2] His claims of disparate treatment by Federal Express rise out of three incidents. In 1986, White was forced to take medical leave due to a work related injury. When he returned, his manager refused to assign him to light duty even though, White claims, a similarly injured white employee would have been given light duty. Furthermore, White notes that on three occasions he was denied a transfer to a dispatcher position; on each occasion, he claims, the position was filled by a white employee. Finally, White asserts that his 1988 discharge, ostensibly for his involvement in a timecard falsification scheme, was in fact racially motivated. Added to these specific incidents of allegedly disparate treatment is White's assertion that Federal Express maintained a racially hostile environment at the Springfield facility.
 
 A.
 
 3
 In our review of the grant of summary judgment on the Sec. 1981 claim, we apply the same standard as the district court and therefore must reverse only if the record reveals an unresolved issue of material fact or if the law was applied to the facts incorrectly. Furthermore, the record must be viewed in a light most favorable to the party opposing the motion. Helm v. Western Maryland Ry. Co., 838 F.2d 729, 734 (4th Cir.1988).
 
 
 4
 As the district court pointed out, the Supreme Court sharply limited the application of Sec. 1981 to employment discrimination claims in Patterson v. McLean Credit Union, 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). Interpreting the scope of Sec. 1981 in the employment context, the Court found that:
 
 
 5
 [T]he relevant provision in Sec. 1981 protects two rights: 'the same right ... to make ... contracts' and 'the same right ... to ... enforce contracts.' ... But the right to make contracts does not extend, as a matter of either logic or semantics, to conduct by the employer after the contract relation has been established, including breach of the terms of the contract or imposition of discriminatory working conditions.
 
 
 6
 Id. at 176-77, 109 S.Ct. at 2372-73. The right to enforce contracts was limited to prohibiting an employer from impairing an employee's access to legal process to enforce an established contract right. Id. at 177-78, 109 S.Ct. at 2373. The present case implicates only the right to make, not the right to enforce contracts.
 
 
 7
 Section 1981 is clearly inapplicable to White's claim of discriminatory discharge. We recently joined a majority of the courts of appeals in holding that, based on Patterson, discriminatory discharge claims are not actionable under Sec. 1981. Williams v. First Union Nat'l Bank of N.C., 920 F.2d 232 (4th Cir.1990). Therefore, the only other claim which could possibly involve the right to make a contract concerns White's alleged denial of transfer from courier to dispatcher. In Patterson, the Court determined that a Sec. 1981 action for discriminatory denial of a promotion exists only where "the nature of the change in position was such that it involved the opportunity to enter into a new contract with the employer." 491 U.S. at 185, 109 S.Ct. at 2373. The district court thoroughly and, we find, correctly analyzed this issue. 729 F.Supp. at 1545-46. Therefore, we hold that the position sought by White did not involve the opportunity to enter into a new contract with Federal Express, thus Federal Express's denial of the requested change in position does not give rise to a Sec. 1981 action.
 
 B.
 
 8
 After the Sec. 1981 claims and the pendent state law claims had been dismissed, the Title VII claims were tried before the Court. After a two day bench trial, the Court rendered judgment in favor of Federal Express. We note that in reviewing the trial court's findings of fact and conclusions of law, we are limited to the clearly erroneous standard as to the factual determinations, however, we must make an independent assessment of the legal conclusions. See Bose Corp. v. Consumers Union of U.S., Inc., 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984); Fed.R.Civ.P. 52.
 
 
 9
 White's causes of action under Title VII consist of allegations of discriminatory discharge, disparate treatment with regard to modified work schedules and with regard to job transfers, and the maintenance of a racially hostile environment. To show discrimination in a mixed motive case such as this one, a plaintiff must prove by a preponderance of the evidence that the employer's motive to discriminate was a substantial factor in the adverse personnel action against the plaintiff. The burden of persuasion then shifts to the employer to show by a preponderance of the evidence that, in the absence of the unlawful motive, it would have reached the same result. Price Waterhouse v. Hopkins, 490 U.S. 228, 259-60, 109 S.Ct. 1775, 1795-96, 104 L.Ed.2d 268 (1989) (plurality opinion) (White J., concurring). The plaintiff may carry its burden under ordinary principles of proof by any sufficiently probative direct or indirect evidence, or the plaintiff may rely on the judicially created proof scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to establish a prima facie case of discrimination.
 
 
 10
 In granting summary judgment on the Sec. 1981 and state law claims, Judge Ellis determined that White had established a prima facie case of discrimination as to his Title VII claims. After the trial of the Title VII issues, Judge Williams determined that White had established a prima facie case only as to the denial of White's application for the dispatcher position, and as to his allegations of a racially hostile environment. However, the Court determined that Federal Express had successfully rebutted the inference of discrimination as to the dispatcher position. Furthermore, the Court held that although the working conditions at the Springfield plant were tainted by racial hostility, Federal Express had instituted sufficient remedial actions to overcome any liability on the issue.
 
 
 11
 We question whether White proved that Federal Express maintained a racially hostile work environment. We have held in the context of gender discrimination actions that, in order to maintain an action under Title VII based on hostile working conditions, "the plaintiff must demonstrate that the employer had actual or constructive knowledge of the existence of a [racially] hostile working environment...." Katz v. Dole, 709 F.2d 251, 255 (4th Cir.1983). Once the plaintiff has made a prima facie showing of a hostile working environment, "the employer may rebut the showing either directly, by proving that the events did not take place, or indirectly, by showing that they were isolated or genuinely trivial." Id. at 256. Furthermore, for the hostile working environment to be actionable under Title VII, the Supreme Court has held, again in the context of gender discrimination, that "it must be sufficiently severe or pervasive 'to alter the conditions of [the victim's] employment and create an abusive working environment.' " Meritor Savings Bank v. Vinson, 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986) (citation omitted).
 
 
 12
 The district court's finding of a racially hostile environment rests on one specific incident of racially offensive remarks exchanged by a black and a white courier, combined with a general finding of conflicts over music selection on the loading docks, allegations that black employees were admonished to return to work when white employees were not, and allegations of unequal advancement for black and white employees. However, the Court found that "[m]ost of the racist incidents detailed before the Court were not directed against plaintiff, and the specific claims of race discrimination allegedly endured by plaintiff are deemed meritless by the Court." Joint Appendix at 201.
 
 
 13
 In determining whether the hostile environment was sufficiently pervasive to be actionable under Meritor Savings Bank, the district court concluded that such an environment "would affect the psychological well-being of any reasonable person," J.A. at 201. However, we have held that there is a subjective as well as an objective component to the pervasiveness inquiry; "the fact finder must examine the evidence both from an objective perspective and from the point of view of the victim." Paroline v. Unisys Corp., 879 F.2d 100, 105 (4th Cir.1989), vacated in part, 900 F.2d 27 (4th Cir.1990). Our review of the record reveals no evidence which establishes that the alleged racially hostile environment had any effect on John White. We therefore cannot agree with the lower court that White had a cause of action for a racially hostile environment. We need not reverse on this point though as the lower court determined that the remedial steps taken by Federal Express were enough to avoid liability. Since we find no reversible error in the decisions of the lower court, the judgments are
 
 
 14
 AFFIRMED.
 
 
 
 [1]
 At trial, this action was consolidated with three other actions brought by Federal Express employees, Claude C. Allen v. Federal Express Corp., CA-89-1094-A, Terri L. House v. Federal Express Corp., CA-89-1095-A, Kevin Boykins v. Federal Express Corp., CA-89-1096-A. All three actions were compromised and settled during the first day of the trial
 
 
 [2]
 White was discharged in 1981, however, he successfully challenged that discharge in federal court and was reinstated in 1984. See White v. Federal Express Corp., CA-83-1293-A and CA-84-0110-A, slip op. (E.D.Va. July 12, 1984)