944 F.2d 905
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Cheryl L. KIRKLAND (No. 89-6466), Plaintiff-Appellant,
v.
Gus C. BRINIAS, and Jim Regas, d/b/a the Original Louis
Drive-In Restaurant, Defendants-Appellees.
Billie Jean LaRUE (89-6467), Plaintiff,
Cheryl L. Kirkland, Appellant,
v.
Gus C. BRINIAS, and Jim Regas, d/b/a the Original Louis
Drive-In Restaurant, Defendants-Appellees.
 No. 89-6466.
 United States Court of Appeals, Sixth Circuit.
 Sept. 6, 1991.
 
 Before RYAN and BOGGS, Circuit Judges, and DOWD, District Judge.*
 RYAN, Circuit Judge.
 
 
 1
 Plaintiffs Cheryl Kirkland and Billie Jean LaRue challenge the district court's judgment for the defendants in this sexual harassment suit against their former employers under 42 U.S.C. § 2000e et seq. The plaintiffs contend that the district court clearly erred in holding that the evidence did not show that the defendants knew or should have known that their employee, Ali Hijer, was sexually harassing the plaintiffs.
 
 
 2
 We conclude that the district court did not clearly err in finding that the plaintiffs did not prove that the defendants knew, or should have known, of the harassment. Because the plaintiffs failed to prove all of the essential elements of a sexual harassment suit, we affirm the judgment of the district court.
 
 I.
 
 3
 Defendants Gus Brinias and Jimmy Regas own The Original Louis Drive-In Restaurant ("Louis' "). Kirkland and LaRue formerly worked as waitresses at Louis'. Both plaintiffs quit after encountering problems with busboy Ali Hijer. After quitting, they sued Brinias and Regas alleging that Hijer subjected them to unwelcome sexual advances, propositions, threats, and physical contact which Brinias and Regas condoned and permitted.
 
 
 4
 LaRue testified that Hijer offered her $100 for sex. After she informed him that she was not interested, he often, over a six-month period, continued to tell her of his desires for her. He also patted her on the buttocks and snapped her bra and continued to do so long after she instructed him not to touch her. In addition to the sexual advances and touching, LaRue testified that Hijer threatened her and grabbed her painfully, over work-related misunderstandings and in response to her request that he clear tables and wipe off chairs. She quit in 1986 after a confrontation with Hijer which began when she asked him to take the chairs down off the tables to prepare the restaurant for opening. Hijer then backed LaRue into a table, poked his finger in her face, and grabbed her arms. When she slapped his face, Hijer kicked her in the shins. She testified that this incident took place in front of Regas who took no steps to protect her and blamed her for picking on Hijer.
 
 
 5
 Kirkland also testified that Hijer offered her $100 for sex, lashed out when asked to do routine work-related jobs, and subjected her to hostile pranks and unwelcomed hugs and pats. Kirkland quit two weeks after a dispute in which she accused Hijer of stealing tips and Regas took Hijer's side. She later asked to return to work, but Brinias refused to rehire her. She then sent a twelve-page letter to the defendants detailing her complaints about her former employment.
 
 
 6
 The testimony of some former employees corroborated the plaintiffs' accounts. For example, waitress Beth Keller testified that Hijer also offered her money for sex. Waitress Betty Beal and cashier Shirley Dunn testified that Hijer threatened to kill them when they asked him to clear tables. Former busboy Mark Pinsley testified that he saw Hijer push Kirkland against the ice machine and put his hands on her breasts, and that the entire restaurant could hear dishwasher Nancy Whittaker's screams for Hijer to keep his hands off her.
 
 
 7
 Other employees, however, testified for the defendants and contradicted the plaintiffs' accounts. These employees testified that they did not witness nor experience any improper sexual touching by Hijer. They also testified that due to language difficulties and cultural differences, Hijer, a recent immigrant from Jordan, had problems getting along with other employees, particularly LaRue. Hijer denied all of the allegations.
 
 
 8
 The testimony regarding the defendants' knowledge of the alleged harassment was also conflicting. LaRue testified that Regas was present the first time Hijer patted her on the buttocks and that Regas only grinned when she asked him to tell Hijer to keep his hands off her. LaRue, Beal, and Dunn also testified that they reported Hijer's initial death threats to Regas and that Regas did not take any action. Their testimony was corroborated by Pinsley's testimony that because the harassment occurred on a day-to-day basis, it would be hard for the defendants not to have noticed it. Finally, Brinias admitted that he had heard that Hijer had offered money to waitresses and had propositioned Keller but that he had not investigated the rumors as no one had come to him with a complaint.
 
 
 9
 Neither the plaintiffs, nor any other employee, complained to the defendants of sexual harassment. In fact, in Kirkland's twelve-page letter of complaints she did not mention sexual harassment at all, and mentioned Hijer only once. Employees Jeffrey Foster, Mary Sharp and Kathy Blizzard all testified that they believed the defendants would have listened and responded to any complaints brought by employees.
 
 
 10
 The district court, after hearing all of the testimony, found in favor of the defendants. The court held that although "[t]here is no question that the plaintiffs, and some of the other waitresses at Louis', were subjected to sexual harassment on the job.... [E]vidence that the defendant employers recognized, or should have recognized, that any of their employees found Mr. Hijer's conduct sexually offensive, did not preponderate in favor of the plaintiffs."
 
 II.
 A.
 Standard of Review
 
 11
 Although the legal conclusions of the district court are subject to de novo review, the court's factual findings are reviewed only for clear error. See Fed.R.Civ.P. 52; see also Anderson v. Bessemer, 470 U.S. 564 (1985). A finding of fact is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948). A district court does not commit clear error in choosing between two permissible views of the evidence. Anderson, 470 U.S. at 574.
 
 B.
 Respondeat Superior Liability
 
 12
 In order for the plaintiffs to prove that they were the victims of offensive work environment sexual harassment, they must assert and prove that:
 
 
 13
 (1) the employee was a member of a protected class; (2) the employee was subjected to unwelcomed sexual harassment in the form of sexual advances, requests for sexual favors, or other verbal or physical conduct of a sexual nature; (3) the harassment complained of was based upon sex; (4) the charged sexual harassment had the effect of unreasonably interfering with the plaintiff's work performance and creating an intimidating, hostile, or offensive working environment that affected seriously the psychological well-being of the plaintiff; and (5) the existence of respondeat superior liability.
 
 
 14
 Rabidue v. Osceola Refining Co., 805 F.2d 611, 619-20 (6th Cir.1986), cert. denied, 481 U.S. 1041 (1987). In offensive environment cases, courts place "the ultimate burden of proof by a preponderance of the evidence upon the claimant followed by a proffer of defense and an opportunity for a plaintiff's rebuttal." Id. at 621. The district court found that the first three elements existed: the plaintiffs were members of a protected class; they were subjected to unwelcomed sexual advances; and the harassment complained of was based upon sex. Because we conclude that the plaintiffs failed to establish respondeat superior liability, we do not reach the issue of the effect of the harassment.
 
 
 15
 To hold an employer liable in coworker offensive environment cases, the plaintiff must demonstrate "that the employer, through its agents or supervisory personnel, knew or should have known of the charged sexual harassment and failed to implement prompt and appropriate correctional action." Id.; see also Katz v. Dole, 709 F.2d 251, 255 (4th Cir.1983); Henson v. Dundee, 682 F.2d 897, 905 (11th Cir.1982). A plaintiff meets this burden "by proving that complaints about the harassment were lodged with the employer or that the harassment was so pervasive that employer awareness may be inferred." Katz, 709 F.2d at 255; see also Henson, 682 F.2d at 905.
 
 
 16
 The plaintiffs concede that they never complained of the harassment to the defendants, nor requested assistance in resolving the problem. Thus, they may only prevail by showing that due to the pervasiveness of the harassment, the defendants must have known of it. Some of the testimony supports a theory of widespread misconduct of which the defendants knew or must have known. Pinsley testified that the harassment occurred on a day-to-day basis and that it was hard not to notice. Both plaintiffs testified that the harassment occurred repeatedly over the course of a year. LaRue further testified that Regas was present the first time Hijer patted her on the buttocks and that Regas only grinned when she asked him to tell Hijer to keep his hands off her. Finally, defendant Brinias admitted that he had indirectly heard that Hijer had propositioned waitresses.
 
 
 17
 There was also testimony, however, that the defendants did not know, and had no reason to know, of the alleged harassment. The plaintiffs did not explicitly tell the defendants of Hijer's sexual harassment, not even in Kirkland's twelve-page letter listing her complaints with her former employers. The defendants and the former assistant manager testified that no employee ever complained about improper sexual conduct by Hijer. This testimony was corroborated by several employees who testified that they were unaware of any improper conduct by Hijer, and that if anyone had complained of harassment, the defendants would have listened and responded to the complaints.
 
 
 18
 The district court found that the plaintiffs failed to prove that the defendants knew or should have known of the harassment. This court may reverse this finding only for clear error. Fed.R.Civ.P. 52. However, where a district court has the opportunity to observe the witnesses' demeanor and chooses between two conflicting accounts, this provides a permissible view of the evidence that cannot be overturned on appeal. Anderson, 470 U.S. at 574.
 
 III.
 
 19
 The district court did not clearly err in finding that the plaintiffs did not prove that the defendants knew or should have known of the harassment. Therefore, because the plaintiffs failed to prove all of the essential elements of their claim, we AFFIRM.
 
 
 
 *
 The Honorable David D. Dowd, Jr., United States District Judge for the Northern District of Ohio, sitting by designation