**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

AUDREY WILLIAMS,
Plaintiff-Appellant,

v.

No. 96-1666

WESTWOOD ONE RADIO NETWORKS,
INCORPORATED,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Albert V. Bryan, Jr., Senior District Judge.
(CA-95-1622-A)

Argued: January 28, 1997

Decided: March 4, 1997

Before ERVIN and HAMILTON, Circuit Judges, and
PHILLIPS, Senior Circuit Judge.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Thomas Louis View, III, Washington, D.C., for Appel-
lant. Ronald Alan Lindsay, SEYFARTH, SHAW, FAIRWEATHER
& GERALDSON, Washington, D.C., for Appellee. **ON BRIEF:** Eliz-
abeth L. Lewis, Karla Grossenbacher, Nelson D. Cary, SEYFARTH,
SHAW, FAIRWEATHER & GERALDSON, Washington, D.C., for
Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Audrey Williams appeals the award of summary judgment to her employer, Westwood One Radio (Westwood), on her claims for discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-5 (1996). Finding no error, we affirm.

I.

Audrey Williams, a black female, is a mail clerk for Westwood, a major United States media concern. She began her employment with Westwood in 1979 and presently works with Anthony Franklin, a mail clerk and darkroom operator; Norman Wood, a printer; and Ramon Yzer, a mail clerk and printer, in the mail department at Westwood. For all times relevant to this suit, Alfred Croft was the supervisor for Westwood's mail department.

Williams brought suit under Title VII asserting two claims against Westwood. First, she alleged that the actions of Croft and Croft's supervisor, Eulas Rush, created a sexually and/or racially hostile work environment that Westwood failed to remedy. Second, she alleged that she was paid less than similarly situated white and male employees because of her sex and/or race.

The hostile work environment alleged by Williams included essentially four incidents or series of incidents:

(1) Croft smoked cigars and blew smoke in Williams' presence even though Croft knew that, at least since 1993, Williams had a particular sensitivity to cigar and cigarette smoke. [1] After a time, Wil-

_____

[1] During her deposition, Williams stated that Croft walked around the mail room and indiscriminately waved his cigar around, distributing smoke throughout the whole room. On appeal, however, Williams characterizes the activity as blowing smoke directly into her face.

2

liams talked to Rush about Croft's cigar smoking. Following that discussion, Croft's cigar smoking in the mail room diminished. However, Croft smoked in Williams' presence at least once after he was told to confine his smoking to his own office. Williams then complained to Margaret Solomon, the Vice President of operations at Westwood, and after that discussion, Croft ceased smoking at work entirely.

(2) Croft had a tendency to pass intestinal gas at the office and did not excuse himself for it. However, on almost all of the occasions that Williams could recall, other Westwood employees were present, and sometimes, those other employees were closer to Croft than was Williams. Once again, Williams complained to Solomon who told Croft to refrain from engaging in any activity in Williams' presence which Williams might find offensive.

(3) Croft uttered the phrase "black bitch" on one occasion. During Williams' deposition she testified that the offending phrase was mumbled by Croft as he was passing Williams and she did not believe the comment was directed at anyone in particular. However, later on, Williams asserted that Croft uttered the phrase when he was typing her job evaluation. Although Williams complained to Westwood officials about Croft's general use of profane language, she never expressed concern to anyone about Croft's "black bitch" comment in particular.

(4) In March 1994, Williams was found eating a sandwich in Westwood's mail room at 3:30 pm. She was admonished by Rush that she should not be eating after the lunch hour. When Williams complained that there was no specific policy against eating food in the mail room, Rush set a much more strict lunch and mail room food policy. Rush later stated that the lunch policy was changed because of "the bitch." On March 24, 1994, Williams complained about the comment in a letter to Westwood written by her attorney. Four days later, Jack Clements, Westwood's President, responded to Williams' complaint, stating that he would personally apologize to Williams for the comment and that he had directed Rush to do the same. Clements also stated that "[s]exual harassment and racism have no place" at Westwood. (J.A. 348).

3

As to her pay disparity claim, Williams maintained that she was paid less than the three other Westwood mail department employees, even though she was the more senior employee to all but Yzer. The record reflects that Franklin, a darkroom operator; Wood, a printer; and Yzer, a printer, all have specialized training which Williams does not have.

On December 13, 1995, Westwood moved for summary judgment on Williams' two claims under Title VII. The district court granted summary judgment to Westwood, and Williams appeals.

II.

Summary judgment should only be granted when there is no genuine issue as to any material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Any doubt pertaining to the existence of a material fact must be resolved against the moving party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). We review a district court's grant of summary judgment de novo. See Higgins v. E.I. DuPont de Nemours & Co., 863 F.2d 1162, 1167 (4th Cir. 1988). Williams simply did not come forth with anything resembling the evidence necessary to avoid summary judgment. Indeed, the only real factual discrepancies in the record are between Williams' deposition testimony and her later filed affidavits. It is well recognized that a plaintiff may not avoid summary judgment by submitting affidavits which conflict with earlier deposition testimony. See Barwick v. Celotex, 736 F.2d 946, 960 (4th Cir. 1984).

III.

Racial and/or sexual harassment which creates a "hostile work environment" is actionable under Title VII because it amounts to discrimination in the conditions of employment. See Meritor Sav. Bank, FSB v. Vinson, 477 U.S. 57, 63-68 (1986); Katz v. Dole, 709 F.2d 251, 254 (4th Cir. 1983); see also 42 U.S.C. § 2000e-2(a)(1) (prohibiting an employer from discriminating "against any individual with respect to [her] . . . terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin"). To establish a hostile work environment claim, the plaintiff must prove that: (1) the conduct in question was unwelcome; (2) the

4

harassment was based on sex or race; (3) the harassment was sufficiently severe or pervasive to create an abusive working environment; and (4) there is some basis for imposing liability on the employer. See Swentek v. USAir, Inc., 830 F.2d 552, 557 (4th Cir. 1987); see also Spicer v. Virginia Dep't of Corrections, 66 F.3d 705, 709-10 (4th Cir. 1995) (en banc). As to the fourth element, the "employer cannot be held liable for isolated remarks of its employees unless the employer `knew or should have known of the harassment, and took no effectual action to correct the situation.'" Id. at 710 (quoting Katz, 709 F.2d at 256 (emphasis added)).

Even if Williams could meet her burden on the first three prongs, she cannot show that she met the fourth prong. The actions in question were relatively isolated occurrences, and as soon as Westwood officials became aware of them, they took prompt remedial action. In short, Westwood remedied every complaint Williams lodged. Accordingly, the district court properly granted Westwood's motion for summary judgment on this claim, and we affirm.

IV.

Williams also claims she was paid a lower salary because of her race and/or sex. This Title VII claim falls under the burden-shifting framework set forth in Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981), and McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under Burdine and McDonnell Douglas, once the plaintiff establishes a prima facie case, a presumption of discrimination arises and the burden of production shifts to the employer, here Westwood, to articulate a legitimate, nondiscriminatory reason for the challenged employment action. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506-07 (1993). If the employer carries this burden of production, the presumption of discrimination "drops out of the picture," see id. at 510-11, and the plaintiff bears the ultimate burden of proving both that the employer's asserted reason was pretextual and that the plaintiff's race and/or sex was the true reason for the adverse employment action. See id. at 515-16. Williams may establish a prima facie case of pay disparity by demonstrating that she is female and/or black and that the job she occupied was similar to higher paying jobs occupied by males and/or whites. See Brinkley-Obu v. Hughes Training, Inc., 36 F.3d 336, 353 (4th Cir. 1994) (sex).

5

The district court apparently assumed that Williams made a prima facie case on this claim but found that Williams failed to rebut Westwood's proffered explanation for the pay disparity. We will assume that Williams made a prima facie case and focus on the second and third stages of the analysis. The evidence in this case demonstrates that Williams was paid less than Franklin, Wood, and Yzer, not on account of her sex and/or race, but rather because the duties of Franklin, Wood, and Yzer required more specialized training than Williams' duties. Moreover, Yzer was apparently paid more than Williams because Yzer was the senior of the two. See Corning Glass Works v. Brennan, 417 U.S. 188, 196 (1974) (seniority system a legitimate reason for pay disparity). In short, the reasons for the pay disparity were clearly legitimate and nondiscriminatory. We glean from the record no evidence demonstrating that the reasons for the pay disparity were pretextual. Accordingly, the district court properly granted summary judgment in favor of Westwood on this claim.**2**

V.

For the reasons set forth above, we affirm the district court's grant of summary judgment to Westwood on both Williams' hostile work environment and pay disparity Title VII claims. This is the very type of case that, "every day threatens to undermine, rather than advance, the laudable objectives of the antidiscrimination laws," Blistein v. St. John's College, 74 F.3d 1459, 1473 (4th Cir. 1996), by causing the public to view Title VII cases as nothing more than what is at issue here--a disgruntled employee trying to exact retribution from her employer for the daily difficulties every person encounters at work on a regular basis in some form or another.

AFFIRMED
_____

**2** Williams also argues that Westwood had a "pattern and practice" of paying women or blacks less than men or whites. However, this claim fails because Williams offered no evidence that Westwood had, in fact, a policy of paying women or blacks less than men or whites. See Franks v. Bowman Transp. Co., 424 U.S. 747, 772 (1976).

6