Leonard WRAGG, Plaintiff,

v.

COMCAST METROPHONE, Defendant.

Civil Action No. 97–3718.

United States District Court,
E.D. Pennsylvania.

Aug. 26, 1998.

**525**

H. Francis deLone, Jr., Philadelphia, PA, for plaintiff.

Richard Z. Freemann, Jr., Philadelphia, PA, for defendant.

## MEMORANDUM AND ORDER

JOYNER, District Judge.

Presently before the Court is Defendant, Comcast Metrophone's ("Comcast" or "Defendant"), Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. Comcast seeks summary judgment on all counts of Plaintiff, Leonard Wragg's ("Wragg" or "Plaintiff"), complaint which seeks relief for racial discrimination under Title VII in count I, under § 1981 in count II, and under the Pennsylvania Human Relations Act ("PHRA") in count III. For the following reasons, the Motion is Granted.

## BACKGROUND

Plaintiff, an African American, was employed by Comcast in approximately March of 1992 as a Cell Technician I ("Cell Tech I"). Plaintiff continued employment with Comcast until his discharge in October of 1995.

Comcast has a promotion and job posting policy which encourages current employees to apply for promotions within the company. When a promotion opportunity becomes available Comcast posts a notice that includes the job requirements and responsibilities. An employee who is interested in applying for the position submits a transfer request form. Promotion decisions are made based, among other things, upon performance, initiative, experience, education, conduct, technical skills, and seniority. Comcast has a practice of interviewing both qualified applicants and those not yet qualified. Comcast interviews the not yet qualified to let them know what steps they need to take to become qualified for such a promotion. When the successful candidate is chosen, Comcast announces the promotion at the next cell technician meeting. Further, those who were interviewed and did not get the position are individually interviewed by a representative from human resources to ensure that they were satisfied with the pro-

cess. During Plaintiff's employment, he applied for and was denied promotions to a Cell Tech II[1] position on four occasions: August of 1993,[2] February of 1995, May of 1995, and August of 1995.

Further, during the course of Plaintiff's employment, he received three (3) disciplinary notices in November of 1994, February of 1995, and June of 1995. The last of these notices put Plaintiff on a six month probationary period. During this probationary period Plaintiff was on notice that any infraction could, and in this case did, lead to his termination.

Plaintiff alleges that during his employment on at least three occasions racist comments were made to him. The first of these came in approximately July of 1994 when Wragg's supervisor at the time, Roger Doub ("Doub"), allegedly said "something to [Wragg] to the effect of that [Wragg] should be slaving in the sun, or something to that effect." (Wragg Dep. at 411). The second comment came in approximately June of 1995 when a Comcast supervisor, Mark Bulwicz ("Bulwicz"), allegedly told Wragg that Wragg made too much money to be promoted. *See* (Wragg Dep. at 368). Finally, Wragg alleges that John Cooke ("Cooke"), Plaintiff's immediate supervisor in June of 1995, repeatedly called Wragg's home on June 12, 1995 and made a racial slur on the answering machine tape. Wragg alleges that Cooke called him a "n*****" on the answering machine tape. (Wragg Dep. at 196–205).

Wragg only complained to Comcast concerning the incident with Cooke. This complaint was lodged in June of 1995.[3] Comcast investigated Wragg's complaint by interviewing four employees and issuing a written report which recommended Wragg be assigned to a new supervisor. This report also notified Wragg of Comcast's decision and delineated Comcast's procedures to appeal the decision. Wragg never appealed the decision.

Plaintiff was assigned to a new supervisor, Wilbert Carter ("Carter"), pursuant to the investigation report. From August 1995 until October of 1995, Carter noted many deficiencies in Wragg's performance and Carter alleges that, in a final incident of insubordination, Wragg insulted and cursed at Carter, lied to Carter, and threatened to walk off the job.[4] Due to this alleged behavior, Carter concluded that Wragg should be discharged and spoke to a human resources representative concerning this discharge. Wragg was discharged on October 12, 1995.

On January 11, 1996, Plaintiff filed a discrimination complaint with the Pennsylvania Human Relations Commission ("PHRC") which he amended on June 13, 1996. Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") on March 29, 1996. Plaintiff filed this action on May 29, 1997.

## I. Summary Judgment Standard

Summary judgment is appropriate where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, reveal no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). Our responsibility is not to resolve disputed issues of fact, but to determine whether there exist any factual issues to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The presence of "a mere scintilla of evidence" in the nonmovant's favor will not avoid summary judgment. *Williams v. Borough of West Chester*, 891 F.2d 458, 460 (3d Cir.1989)(citing *Anderson*, 477 U.S. at 249, 106 S.Ct. 2505). Rather, we

---

1. A Cell Tech II is the next step up from a Cell Tech I. The Cell Tech II position requires that an employee have certain qualifications including having been a Cell Tech I for at least 18 months and other technical skills. *See* (Def.'s Ex. 13) (listing qualifications for Cell Tech II position).

2. Plaintiff originally stated that this first request was in March of 1993, but, through discovery, the date has been clarified as August of 1993.

3. The record is not clear whether Wragg told Comcast about Cooke's alleged racially derogatory comment, but Wragg did, at least, complain to Comcast management about the phone calls to his home. Wragg did not include this alleged racially derogatory comment as grounds for recovery in either his PHRC or EEOC complaint.

4. Wragg denies this conduct.

will grant summary judgment unless "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505.

In making this determination, all of the facts must be viewed in the light most favorable to the non-moving party and all reasonable inferences must be drawn in favor of the non-moving party. *Id.* 477 U.S. at 256, 106 S.Ct. 2505. Once the moving party has met the initial burden of demonstrating the absence of a genuine issue of material fact, the non-moving party must establish the existence of each element of its case. *J.F. Feeser, Inc. v. Serv–A–Portion, Inc.*, 909 F.2d 1524, 1531 (3d Cir.1990) (*citing Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).

## II. Hostile Work Environment

█ Plaintiff seeks relief under both Title VII and the PHRA[5] alleging that Comcast subjected him to a racially hostile work environment.

█ In order to establish a hostile work environment claim under Title VII, a plaintiff must show that he was subjected "to conduct that rises above that which is merely offensive or annoying; the conduct implicates Title VII only if it is ' "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." ' " *Harley v. McCoach*, 928 F.Supp. 533, 538–39 (E.D.Pa.1996)(quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 20, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993)(internal citations omitted)). The Third Circuit has devised a five part test to apply in determining whether a plaintiff has made out a hostile work environment claim. Wragg must show that: (1) he suffered intentional discrimination on account of his race; (2) the discrimination was pervasive and regular; (3) he was detrimentally affected by the discrimination (the subjective standard); (4) the discrimination would have detrimentally affected a reason-

able person in the plaintiff's position (the objective standard); and (5) the existence of *respondeat superior* liability. *See Andrews v. City of Philadelphia*, 895 F.2d 1469, 1482 (3d Cir.1990). In making this determination, a court must look to the "totality of the circumstances." *West v. Philadelphia Electric Company*, 45 F.3d 744, 753 (3d Cir.1995)(quoting *Harris*, 510 U.S. at 23, 114 S.Ct. at 371).

In the instant case, Plaintiff argues that the denial of promotions during his tenure at Comcast coupled with three statements made by his supervisors are sufficient to sustain a hostile work environment claim. The three allegedly racially derogatory statements Plaintiff complains of are as follows: 1) a comment by Doub that Plaintiff "should be slaving in the sun or something to that effect" (Wragg Dep. at 411); 2) a comment by Bulwicz that Plaintiff makes too much money to be promoted (Wragg Dep. at 368); and 3) the racial epithet allegedly used by Cooke to Plaintiff. (Wragg Dep. at 196–205).

Comcast responds that these comments are not sufficient to meet the pervasive and regular standard; that Wragg has not presented evidence to demonstrate that subjectively he was detrimentally affected due to these comments; and that Plaintiff has not presented evidence to demonstrate that a reasonable African American would have been detrimentally affected by the comments (the objective standard). Finally, Comcast argues that even if the facts were sufficient to establish a hostile work environment, Plaintiff can not demonstrate *respondeat superior* liability since Comcast promptly and adequately took action to remedy the complaint it received from Wragg.

We agree that Plaintiff's hostile work environment claim will not succeed as Plaintiff has not presented sufficient evidence to demonstrate *respondeat superior* liability. District courts apply agency law to determine whether *respondeat superior* liability exists. *See Meritor Savings Bank, FSB v. Vinson*,

---

**5.** Title VII and PHRA claims are analyzed under the same framework and standards. *See Brennan v. National Tel. Directory Corp.*, 881 F.Supp. 986, 994 n. 5 (E.D.Pa.1995). Thus, we will only refer to this as the Title VII claim. Further, both gender and race discrimination claims are analyzed under the same standards. *See West v. Philadelphia Electric Company*, 45 F.3d 744, 753 (3d Cir.1995).

477 U.S. 57, 66, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986). Therefore, "if a plaintiff proves that management-level employees had actual or constructive knowledge about the existence of a sexually [or racially] hostile environment and failed to take prompt and adequate remedial action, the employer will be liable." *Andrews,* 895 F.2d 1469 (citing *Katz v. Dole,* 709 F.2d 251, 255 (4th Cir. 1983)). "[T]o determine whether the remedial action taken was adequate, we must consider whether the action was 'reasonably calculated to prevent further harassment.'" *Knabe v. Boury Corp.,* 114 F.3d 407, 412 (3d Cir.1997)(quoting *Saxton v. AT & T Co.,* 10 F.3d 526, 535 (7th Cir.1993)).

Applying these principles to the instant case, we find that Comcast took prompt and adequate remedial action following Plaintiff's complaint concerning Cooke's behavior. The record is clear that Wragg only complained to Comcast about the incident with Cooke. After Comcast received the complaint they conducted an investigation, including interviewing four employees. Following the investigation, Comcast issued a written report dated June 23, 1995, which concluded that "there is no intent to cause emotional distress (harassment), however, there are two strong personalities involved in this situation that require attention." (Def.'s Ex.18). Due to this conclusion, the Comcast supervisor who conducted the investigation and prepared the report, Mark Bulwicz, recommended that Plaintiff be reassigned to one of two new Cell Supervisors within 2–3 weeks after the report was prepared. *Id.* Further, the report provided Plaintiff with all the necessary procedural information to appeal this decision. *Id.*

Plaintiff chose not to appeal the June 23, 1995 decision by Comcast. *See* (Wragg Dep. at 216). Further, Plaintiff admitted in deposition that after this investigation was conducted and the report was issued, he was reassigned to Carter and was not harassed by Cooke again. *Id.* at 215–18. We find

that Comcast can not be held liable on the hostile environment claim as they had in place adequate remedial measures which were reasonably calculated to prevent further harassment and which, in fact! according to Plaintiff's own admission, did remedy the complained of problem. *See Knabe,* 114 F.3d at 412–14; *Bouton v. BMW of North America, Inc.,* 29 F.3d 103, 110 (3d Cir.1994). Thus, Plaintiff can not demonstrate *respondeat superior* liability and, therefore, can not fulfill the necessary elements established by the Third Circuit in *Andrews* to make out a hostile work environment claim.[6] *See Andrews,* 895 F.2d at 1482 (must show the existence of *respondeat superior* liability). We will grant summary judgment as to the hostile environment claim.

### III.   Failure to Promote Claim

■ Plaintiff is also alleging racial discrimination in Defendant's failure to promote him to the Cell Tech II position. Plaintiff applied for this promotion on four separate occasions: August of 1993; February of 1995; May of 1995; and August of 1995.

Defendant responds that Plaintiff can not make out a *prima facie* case of discrimination on the failure to promote claim. Defendant also argues that even if Plaintiff could establish a *prima facie* case, he can not show that Defendant's legitimate, non-discriminatory reason for discharge was a pretext.

■ In failure to promote claims under Title VII, the plaintiff must first establish a *prima facie* case of unlawful discrimination. Plaintiff must show that he: "1) belongs to a protected class; 2) applied for and was qualified for a job in an available position; 3) was rejected; and 4) after the rejection the position remained open and the employer continued to seek applications from persons of plaintiff's qualifications for the position." *Bray v. Marriott Hotels,* 110 F.3d 986, 990 (3d Cir.1997) (citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct.

---

6. As we have decided the issue on *respondeat superior* liability, we find no need to address Defendant's other claims concerning the lack of pervasiveness and regularity and the failure of Plaintiff to meet both the subjective and objective standards of being detrimentally affected. Fur-

ther, we find it unnecessary to address the potential statute of limitations problem concerning Plaintiff's claims. Thus, this Memorandum and Order does not pass on the merits of these claims.

1817, 1824, 36 L.Ed.2d 668 (1973)). Once a plaintiff has met this burden, the burden of production shifts to the defendant to " 'articulate some legitimate, nondiscriminatory reason for the employee's rejection.' " *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir.1994) (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824)). This requires the defendant to "come forth with evidence, which, if taken as true, demonstrates that there was a non-discriminatory reason for the decision not to promote the plaintiff." *Bray*, 110 F.3d at 990 (internal citations omitted). If defendant meets this burden, then the burden shifts back to the plaintiff to "produce evidence from which a reasonable factfinder could conclude either that the defendant's proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination." *Id.* To meet this burden, a plaintiff must "demonstrate such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy of credence' and hence infer 'that the employer did not act for [the asserted] nondiscriminatory reasons.' " *Fuentes*, 32 F.3d at 765 (quoting *Ezold v. Wolf, Block, Schorr & Solis–Cohen*, 983 F.2d 509, 531 (3d Cir.1992) and *Josey v. John R. Hollingsworth Corp.*, 996 F.2d 632, 638 (3d Cir.1993)(internal citations omitted)).

Assuming *arguendo that* Plaintiff has made out a *prima facie* case on his failure to promote claim, Plaintiff has not demonstrated that Defendant's legitimate, non-discriminatory reason for the denial of promotions was a pretext. Defendant offers the following explanations as to why Plaintiff did not receive the promotions in question. For the August of 1993,[7] February 1995, and May 1995 promotion requests by Wragg, Defendant offers as explanation that the supervisors for those positions did not think Wragg possessed the necessary technical skills to fulfill the job requirements of a Cell Tech II. *See* (Cooke Dep. at 24–32 and Doub Dep. at 130–166). Further, for the February 1995 and May 1995 promotion requests, Defendant additionally offers that the supervisors did not think Wragg possessed the necessary professional conduct skills (due to his two disciplinary notices) to fulfill the job requirements. *Id.* In June 1995, Plaintiff received a third disciplinary notice and was placed on probation. Thus, when Plaintiff applied for a promotion in August of 1995, his supervisor, Carter, told him it was not realistic to expect to be promoted while he was on probation. Defendant offers that all those who were promoted instead of Plaintiff were more qualified for the positions. *See Id.* Thus, Defendant has sufficiently stated a legitimate, nondiscriminatory reason for Plaintiff's discharge.

To show that this legitimate, non-discriminatory reason was a pretext, Plaintiff argues this his performance evaluations were good. *See Lewis v. State of Delaware Dep't. of Public Instruction*, 948 F.Supp. 352, 362 (D.Del.1996) (plaintiff's own opinion of his suitability for a position is not at issue). However, Plaintiff does not present the performance evaluations or qualifications of the employees who received the promotions to show that he was equally qualified to fulfill the position. Instead, Plaintiff only offers his own sworn affidavit which states that "Comcast denied me promotions I deserved and instead promoted less qualified white employees to the positions for which I applied." (Wragg Aff. at ¶ 4); *see also* (Pl.'s Mem. at 10–11). This vague and conclusory statement is insufficient at the summary judgment stage to sustain Plaintiff's claim. At summary judgment the Plaintiff must come forward with specific facts from which a reasonable jury could find for him. *See* Fed.R.Civ.P. 56 (stating that an affidavit or response shall set forth specific facts showing that there is a genuine issue of material fact); *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2512;

---

7. Further, as of August 1993 Defendant argues that Plaintiff had not been in the Cell Tech I position long enough to warrant promotion to Cell Tech II. Comcast's guidelines provide that in order to be considered for a Cell Tech II position, the applicant must have been a Cell Tech I for at least 18 months. Plaintiff knew of this requirement as it is clearly listed on the job posting. Plaintiff, hired in March of 1992, had only been with the company for 17 months when he requested his first promotion. *See* (Def.'s Ex. 13).

see also Sheridan v. E.I. DuPont de Nemours Co., 100 F.3d 1061 (3d Cir.1996) (plaintiff presented sufficient evidence to question defendant's offered non-discriminatory reason where she presented specific facts to question the credibility of two of defendant's key witnesses). Plaintiff has failed to meet this burden. He has failed to show either that Defendant's proffered legitimate, non-discriminatory reasons are not worthy of credence or that "invidious discrimination was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764 (internal citations omitted). Therefore, we will grant summary judgment for the failure to promote claim.

## IV. Discharge Claim

■ Plaintiff also argues that he was discharged based on racial discrimination pursuant to Title VII, the PHRA, and § 1981.[8]

■ Plaintiff's discharge claim is governed by the same burden shifting analysis discussed *supra*.[9] In order to make out a *prima facie* case, a plaintiff must demonstrate that 1) he is a member of a protected class; 2) he was qualified for the position; 3) he was discharged; and 4) the position was filled by a person not of the protected class. *See Sheridan*, 100 F.3d at 1066 n. 5 (3d Cir.1996). A defendant must then come forward with a legitimate, non-discriminatory reason for the discharge to which a plaintiff must "produce evidence from which a reasonable factfinder could conclude either that the defendant's proffered justifications are not worthy of credence or that the true reason for the employer's act was discrimination." *Bray*, 110 F.3d at 990.

On the discharge claim, this Court finds that even if Plaintiff could establish a *prima facie* case,[10] Plaintiff has produced no evidence which calls into doubt Defendant's legitimate, non-discriminatory reason for the discharge.

As the legitimate, non-discriminatory reason for Plaintiff's discharge, Defendant presents the testimony of Carter, Plaintiff's immediate supervisor when he was terminated. Carter testified that Plaintiff had numerous performance problems including failure to communicate with his supervisor, failure to carry out assigned tasks, and lack of technical knowledge to complete assigned tasks. *See* (Carter Dep. 12/22/97 at 26–34, 12/29/97 24–26, 42–48). Further Carter testified that Plaintiff was verbally abusive to Carter using foul and profane language and calling Carter a "n******" and "Uncle Tom." [11] (Carter Dep. 12/29/97 at 43). This behavior was exhibited while Wragg was already on probation. This testimony establishes a legitimate, non-discriminatory reason for the discharge.

To attempt to call into question this stated reason for discharge, Plaintiff states the he had good performance reviews and that Carter testified that this was the only case he knew of where a Cell Tech's supervisor provided human resources with a group of memoranda prepared by the supervisor outlining the employee's insubordination as evidence to support the decision to terminate. *See* (Carter Dep. at 35–36). This evidence is insufficient to call into question Defendant's stated reason for discharge. *See Sheridan*, 100 F.3d at 1074 (plaintiff presented evidence to impeach credibility of defendant's witnesses). Plaintiff has not presented any evidence that suggests any "weaknesses, implausibilities, inconsistencies, incoherences, or contradic-

8. Plaintiff does not allege in his complaint that he was discharged in retaliation for complaining of racial discrimination.

9. The Title VII, PHRA, and § 1981 claims are analyzed using the same framework. *See Harley*, 928 F.Supp. at 538 (internal citations omitted).

10. It is questionable whether, in fact, Plaintiff can make out a *prima facie* case as the only evidence Plaintiff offers to support the contention that Defendant hired someone outside the protected class is his own sworn affidavit of the hiring practices after he was terminated. It is

questionable whether Plaintiff has the personal knowledge to submit an affidavit stating that after his termination there were no African Americans hired at Comcast.

11. Plaintiff disputes these facts. However, the Court must accept Defendant's proffered reason as true. *See Bray*, 110 F.3d at 990 (defendant must "come forth with evidence, which, if taken as true, demonstrates that there was a non-discriminatory reason for the decision not to promote the plaintiff").

tions in [Defendant's] proffered legitimate nondiscriminatory reason." *Fuentes,* 32 F.3d at 765. Plaintiff's performance evaluations consistently listed the performance problems Comcast stated it had with Plaintiff. Further, Plaintiff's disciplinary notices listed the conduct problems Comcast had with Plaintiff.

█ We also find no merit in Plaintiff's suggestion that Carter's memoranda created an irregularity in the discharge process. Carter testified that he prepared contemporaneous memoranda to his file listing the problems discussed with Plaintiff throughout their supervisory relationship. (Carter Dep. 12/22/97 at 14–15). When Carter determined that Plaintiff should be terminated, he went to his immediate supervisor, Cooke, to suggest that Plaintiff be terminated and voluntarily provided Cooke with copies of his memoranda to document his concerns. *Id.* at 19. Cooke suggested that Carter forward copies of his memoranda to Human Resources to support his contention that Plaintiff be terminated. *Id.* at 19–20. Even if no other supervisor at Comcast kept such records, the fact that Carter choose to in accordance with his management style does not create inconsistencies or implausibilities in Comcast's stated legitimate, non-discriminatory reason for discharge as the memoranda simply document the problems Carter was experiencing with Plaintiff. Therefore, as Plaintiff has not presented sufficient evidence to cast doubt on Defendant's legitimate, non-discriminatory reason, we will grant summary judgment on Plaintiff's discriminatory termination charge.

### CONCLUSION

An appropriate Order follows.

### ORDER

AND NOW, this 26th day of August, 1998, upon consideration of Defendant's Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56 and Plaintiff's response thereto, it is hereby ORDERED that, in accordance with the foregoing Memorandum, the Motion is GRANTED.